UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                               Case No. 07-80222-DHW
                                                    Chapter 7
CLINTON L. JORDAN
TRACY A. JORDAN,

        Debtors.

UNITED GENERAL TITLE
INSURANCE COMPANY,

        Plaintiff,
v.                                                  Adv. Proc. No. 07-08052-DHW

CLINTON L. JORDAN and
TRACY A. JORDAN,

        Defendants.


## MEMORANDUM OPINION

On June 11, 2007, United General Title Insurance Company ("United General") filed this adversary proceeding seeking a determination that its claim against the defendants, Clinton L. and Tracy A. Jordan, is nondischargeable. More particularly, United General contends that its claim arises as a result of the defendants' willful and malicious injury to property through conversion and is therefore not dischargeable under 11 U.S.C. § 523(a)(6).

Before the court is United General's motion for summary judgment (Doc. 29). A hearing on the motion was held on March 17, 2008. At the hearing, United General appeared through its counsel, Jeremy L. Retherford, and the defendants appeared through their counsel, F. Patrick Loftin.

The defendants do not dispute United General's version of the relevant facts, yet they maintain that United General is not entitled to a judgment as a matter of law. For the following reasons, the court finds that United General's

motion for summary judgment is due to be granted on the issue of willful and malicious acts committed by the Jordans but denied as to the issue of injury to property.

## JURISDICTION

The court derives its jurisdiction in this proceeding from 28 U.S.C. § 1334 and from an order of the United States District Court for this district referring title 11 jurisdiction to this court. Further, because this proceeding is one to determine the dischargeability of a particular debt, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the court's jurisdiction extends to the entry of a final judgment or order.

## UNDISPUTED FACTS

As noted, the defendants do not dispute United General's version of the relevant facts surrounding this matter. Those facts are set out by United General in its memorandum of law (Doc. 30) and are drawn from facts contained in its composite evidentiary submission (Doc. #31). The court adopts those facts as the facts in this case and summarizes them as follows.

Jordan Investment Properties, LLC ("Jordan Investment Properties") was formed in January 2003. Since its formation, Clinton L. Jordan and Tracy A. Jordan have been the sole members as well as the sole managing members of Jordan Investment Properties. Jordan Investment Properties was formed by the Jordans to buy, sell, and trade real estate and rental properties.

In August 2003, Jordan Investment Properties executed and delivered to Phenix-Girard Bank ("Phenix-Girard") a promissory note in the original principal amount of $71,406.25. The purpose of the loan was to finance the construction of a home on real property located at 503 Stagecoach Drive, Phenix City, Alabama. Phenix-Girard took a mortgage on the property in order to secure the indebtedness. The mortgage gave Phenix-Girard an interest not only in the realty but also in proceeds resulting from any disposition of the realty.

The mortgage contained a due on sale provision.[1]

The August 2003 note was renewed in January 2004. The renewal note was in the principal amount of $71,606.25. Like the original note, the renewal note was secured by the realty and the proceeds from its sale.

On or about December 3, 2003, Jordan Investment Properties entered into a "Bond for Title" agreement with George and Gwendolyn Ivory. Jordan Investment Properties agreed to convey title to the Ivorys once all of the required payments were made under the Bond for Title contract.

In early 2006, the Ivorys decided to purchase the property. The Jordans were aware of the Phenix-Girard mortgage but did not notify Phenix-Girard that the property was being sold. Jordan Investment Properties sold the property to the Ivorys on or about March 15, 2006 with a quit claim deed for the sum of $82,329.62.

The Ivorys financed the purchase through IndyMac Bank, and to secure the obligation, the Ivorys executed and delivered a mortgage on the property to IndyMac. United General issued a title insurance policy to IndyMac Bank insuring the bank against loss or damage arising out of a defect in the title to the property. The title search, however, did not reveal the existence of the mortgage held by Phenix-Girard. Clinton Jordan knew that Phenix-Girard held a mortgage on the property despite the assertion of the title examiner to the contrary.

At the time of the sale, the Jordans maintained a deposit account with Phenix-Girard, but rather than depositing the sale proceeds into that account, they deposited the funds into a newly-opened account at Colonial Bank. Further, the Jordans did not disclose to Phenix-Girard that the property had been sold.

---

[1] The contract actually prohibited the sale of the realty without Phenix-Girard Bank's consent. Nevertheless, Phenix-Girard was granted a security interest in the proceeds from any sale of the property whether made with or without the bank's consent.

3

The Jordans did not repay their note to Phenix-Girard from the sale proceeds. Instead, they used the proceeds to repay debts owing to American Express ($28,610), Advanta Bank ($7,300), Bank of America ($9,720), Chase ($8,720), and various trade creditors on another project ($20,400).

Once Phenix-Girard learned that the property had been sold, it accelerated the entire balance due under the note. Because the Jordans were unable to satisfy the indebtedness, Phenix-Girard initiated foreclosure proceedings on the property.

As a result of the threat of foreclosure, IndyMac Bank gave notice of a claim to United General under the title insurance policy. On November 10, 2006, Phenix-Girard assigned the Jordan Investment Properties note and mortgage to United General for valuable consideration. On the date of the assignment, the balance owed under the note was $65,849.82 plus interest, late charges, and collection costs including attorney fees.

## LEGAL CONCLUSIONS
### Summary Judgment Standard

The standard for summary judgment established by Fed. R. Civ. Proc. 56 is made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. Proc. 7056. The rule provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Proc. 56(c).

Summary judgment is appropriate when "there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport,* 229 F.3d 1012, 1023

4

(11th Cir. 2000). The party moving for summary judgment "bears the burden of proving that no genuine issue of material fact exists." *Information Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). Once met, the burden shifts to the non-movant to "show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Id.* at 1224-25.

Conversion

In this case, the Jordans sold real property that was subject to the mortgage of Phenix-Girard and failed to remit any of the sale proceeds to the bank as required by the note and mortgage. Instead, the sale proceeds were retained by the Jordans and used to repay debts to other creditors. United General contends that in so doing the Jordans wrongfully converted property of Phenix-Girard. United General, as assignee of Phenix-Girard, contends that the debt is therefore nondischargeable.

An individual debtor filing for relief under chapter 7 is not entitled to a discharge from any debt for willful and malicious injury by the debtor to the property of another. *See* 11 U.S.C. § 523(a)(6). Under § 523(a)(6), the injury must be both "willful and malicious." United General bears the burden of proving the elements of 11 U.S.C. § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

"Willful" means deliberate or intentional. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 n.3, 118 S. Ct. 974, 977 (1998). "Willful" modifies "injury." To be nondischargeable, the debtor must intend to injure the defendant or his property.[2] *Id.* at 61. Willful does not encompass a recklessly or negligently inflicted injury. *Id.* at 64.

"Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *Lee v. Ikner (In re Ikner)*,

---

[2] It is not sufficient that the debtor intentionally committed an act which resulted in injury if the injury itself was neither intended nor substantially certain to result from the act. *Hope v. Walker (In re Walker)*, 48 F.3d 1161 (11th Cir. 1995).

5

883 F.2d 986, 991 (11th Cir. 1989)).

"Willful and malicious injury includes willful and malicious conversion, which is the unauthorized exercise of ownership over goods belonging to another to the exclusion of the owner's rights." *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52, 54 (11th Cir. 1995). But not every tort of conversion falls within the purview of 11 U.S.C. § 523(a)(6). "[I]nnocent or technical" conversion of a person's property does not lend itself to a finding of a willful and malicious injury for dischargeability purposes. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S. Ct. 151, 153, 79 L. Ed. 393 (1934). To be nondischargeable, the resulting injury must have been deliberate and intentional. *Geiger*, 523 U.S. at 61; *see McIntyre v. Kavanaugh*, 242 U.S. 138, 141, 37 S. Ct. 38, 39, 61 L. Ed. 205 (1916). A negligent or reckless conversion would not fall within the statute. Deliberate and intentional injury "does not follow as of course from every act of conversion, without reference to the circumstances." *Davis,* 293 U.S. at 332.

The Eleventh Circuit in *Wolfson v. Equine Capital Corporation (In re Wolfson)*, 56 F.3d 52 (11th Cir. 1995) acknowledged that in some circumstances, "[t]here may be an honest, but mistaken belief, *engendered by a course of dealing*, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one." *Wolfson.* 56 F.3d at 54 (quoting *Davis,* 293 U.S. at 332). *See also Eagle Bank of Alabama v. Robertson (In re Robertson)*, Adv. Proc. No. 01-0018-DHW (Bankr. M.D. Ala. Dec. 19, 2001).

In the case *sub judice*, the evidence supports a finding that the Jordans acted willfully. It is beyond dispute that they intentionally sold property subject to the mortgage of Phenix-Girard and that they deliberately failed to repay the mortgagee from the sale proceeds. This act was intentionally and deliberately done in the face of contractual provisions (of which they were aware) to the contrary. Further, there is nothing in the evidence that would support a claim that the Jordans honestly, though mistakenly, believed, through course of dealing or otherwise, that their powers to sell and retain the sale proceeds had been enlarged or that the contractual provisions concerning this property had been modified or removed. Hence, it follows that by selling the mortgaged property and retaining the sale proceeds therefrom, the Jordans' actions were

6

Case 07-08052    Doc 37    Filed 04/14/08    Entered 04/14/08 14:00:34    Desc Main
Document      Page 6 of 9

willful within the meaning of § 523(a)(6).

The evidence also supports a finding that the Jordans acted maliciously. As earlier noted, "malicious" means wrongful and without just cause. Without question, the Jordans acted wrongfully in their dealings with Phenix-Girard. First, they were in violation of express contractual provisions by selling the mortgaged property without the consent of Phenix-Girard. In addition, the Jordans acted wrongfully by retaining and using for other purposes the sale proceeds in violation of Phenix-Girard's interest in those funds. This, too, was in violation of express contractual provisions granting Phenix-Girard a security interest in any sale proceeds. Therefore, the Jordan's actions were wrongful as that term is used in context of § 523(a)(6).

Having found that the Jordans acted willfully and maliciously, United General is entitled to partial summary judgment on those elements of its claim under § 523(a)(6).

## Injury

In order to prove a nondischargeability claim under § 523(a)(6), the plaintiff must show that there has been an injury. Here, the evidence does not support summary judgment for the plaintiff.

United General filed this complaint solely in its capacity as assignee of Phenix-Girard. As such, United General stands in the shoes of Phenix-Girard with respect any of the bank's claims against the Jordans.[3] *See Nissan Motor Acceptance Corp. v. Ross*, 703 So.2d 324, 326 (Ala. 1997)("A valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses"); *Singer Asset Finance Co. v. Connecticut General Life Ins. Co.*, 975 So.2d 375, 380 (Ala. Civ. App. 2007)(when a party assigns its rights under a contract, "the assignee steps into the shoes of the assignor and possesses all

---

[3] Earlier in this adversary proceeding, the Jordans moved for summary judgment contending, *inter alia*, that there was no privity of contract between themselves and United General. Lack of privity, however, is not a meritorious defense because, through the assignment of the contract, United General replaced Phenix-Girard as the real party in interest, thereby endowing it with privity of contract.

the rights the assignor originally possessed, but nothing more"); Restatement (Second) of Contracts § 317 (1981); 6 Am. Jur. 2d *Assignments* § 144 (1999).

United General contends that the entire indebtedness owed to Phenix-Girard as of the date of the assignment ($65,849.82 plus interest, late charges, and collection costs including attorney fees) is nondischargeable. Yet, Phenix-Girard did not suffer an injury to that extent, if at all. Although United General may have paid Phenix-Girard its full claim in return for an assignment of the Jordan note and mortgage, it is not United General's loss that is the measure here. Rather, the injury is measured by the damage suffered by Phenix-Girard to its property or property interest. United General's injury is limited to that amount.

The transfer of the realty to the Ivorys by the Jordans had no effect upon Phenix-Girard's mortgage interest in the realty. Once the transfer was complete, in this case by quit claim deed, Phenix-Girard's mortgage continued to encumber the realty in the hands of the Ivorys. Phenix-Girard was free to foreclose on the realty post-transfer in the event of a default. In fact, it initiated that very proceeding. Had it completed foreclosure, its damage (that is, injury to its property) would have been the difference between the amount of its claim and the price received at foreclosure (assuming the price at foreclosure was less than its claim) plus the costs of foreclosure. Because there is no evidence, undisputed or otherwise, as to the amount of the injury to Phenix-Girard, United General is not entitled to summary judgment on that element of its § 523(a)(6) claim.

**CONCLUSION**

For the reasons stated herein, United General's motion for summary judgment is due to be granted on the issue of the Jordans' commission of willful and malicious acts under § 523(a)(6) but denied as to the issue of the resultant injury under that same Code section. Pursuant to Fed. R. Bankr. Proc. 9021 and

8

consistent with this memorandum opinion, a separate order will enter granting in part and denying in part United General's summary judgment motion.

 Done this the 11th day of April, 2008.

           /s/ Dwight H. Williams, Jr.
           United States Bankruptcy Judge

c: Jeremy L. Retherford, Plaintiff's Attorney
  F. Patrick Loftin, Defendants' Attorney