# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re

CLINTON L. JORDAN and
TRACY A. JORDAN,

     Debtors.

_____

UNITED GENERAL TITLE
INSURANCE COMPANY,

     Plaintiff,

v.

CLINTON L. JORDAN and
TRACY A. JORDAN,

     Defendants.

Case No. 07-80222-DHW
Chapter 7

Adv. Proc. No. 07-08052-DHW

## MEMORANDUM OPINION

Before the court is the complaint filed by United General Title Insurance Company ("United General") seeking a determination that its claim against Clinton L. and Tracy A. Jordan ("Jordans" or "debtors") is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). For the reasons that follow, the court concludes that the Jordan's debt to United General is dischargeable.

## JURISDICTION

The court derives its jurisdiction in this proceeding from 28 U.S.C. § 1334 and from an order of the United States District Court for this district referring title 11 jurisdiction to this court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, because this proceeding is one to determine the dischargeability of a particular debt, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I), and the court's jurisdiction extends to the entry of a final judgment or order.

## FACTUAL FINDINGS AND PROCEDURAL BACKGROUND

On February 2, 2008, United General filed a motion for summary judgment in this proceeding (Doc. #29). Following a March 17, 2008 hearing, the court entered a memorandum opinion (Doc. #37) and order (Doc. #38) granting the motion in part finding that the Jordans had willfully and maliciously converted sale proceeds, but denying the motion in part concluding that, as to the element of injury to property, United General was not entitled to summary judgment. A copy of the memorandum opinion addressing United General's motion for summary judgment is attached hereto. Therein is a recitation of the relevant facts which neither party disputes and which the court adopts here as its final finding of facts.

On April 28, 2008, a trial was held on the limited issue of the extent of the injury, if any, to United General's property. At trial, neither party presented any further evidence. United General, however, argued that as a result of the Jordan's conversion of sale proceeds, it had sustained an injury to its property that is equal to the amount of its claim.

## LEGAL CONCLUSIONS

Because this court was not persuaded that the undisputed facts necessarily led to the conclusion that United General had suffered an injury to its property interest, United General's earlier motion for summary judgment was denied. In reaching that result, the court was impressed by the fact that United General brought this dischargeability complaint as the assignee of Phenix-Girard. As an assignee, United General's rights were the same as, but not greater than, those of the assignor, Phenix-Girard. Although the Jordans failed to pay Phenix-Girard the proceeds from the sale of the mortgaged realty, at the end of the day, Phenix-Girard's mortgage lien on the realty was unaffected by the sale. Phenix-Girard's remedy of foreclosure remained intact and would have mitigated, if not completely satisfied, its claim against the Jordans. *See* Memorandum Opinion (Doc. #37).

United General makes a number of arguments in support of its contention that an injury to its property interest indeed resulted from the Jordans' conversion of the sale proceeds. First, it contends generally that discharging this

2

debt leaves "United General in the untenable position of having to foreclose on the individuals that dutifully paid the Jordans. Allowing the Jordans to walk away from their actions without consequence is simply inequitable and unjust." Brief of United General, Doc. #43, p. 9.

The court does not dispute that the Ivorys' property interest may have been harmed by the failure of the Jordan's to pay off the mortgage on the transferred realty. There is no indication that the Ivorys intended to purchase the Jordans' realty subject to the mortgage of Phenix-Girard, and one would expect that they intended to buy the property free of any mortgage.[1] If so, their property interest may have been harmed by the Jordans' failure to satisfy an existing mortgage with the sales proceeds. Yet, the Ivorys did not file a complaint to determine the nondischargeability of their claim.

Further, United General contends that a finding of nondischargeability would result in inequitable and unjust harm to the Ivorys because United General would foreclose its mortgage on the Ivorys' realty. The court is not persuaded by that argument. United General provided IndyMac Bank with a title insurance policy insuring it against loss or damage arising out of a defect in the title. Through its own negligence, or that of its agent, United General failed to discover the Phenix-Girard mortgage. When IndyMac Bank made a claim under that policy, United General satisfied the Phenix-Girard mortgage and took an assignment. Its duty to IndyMac arising under the title insurance policy would no more allow it to foreclose the mortgage than it would to have allowed Phenix-Girard to do so prior to the assignment. Should United General foreclose its first lien position, it would necessarily breach its duties under the title insurance policy to IndyMac Bank.[2] Hence, in the view of the court, United General's implied threat of foreclosure is a hollow one.

Next, United General cites the court to authority standing for the

---

[1] That fact, however, is not entirely certain in that the conveyance was accomplished by means of a quit claim deed.

[2] Although the title insurance policy protected only IndyMac Bank's interest and not that of the Ivorys, the Ivorys nevertheless may have an enforceable interest in that contract as third-party beneficiaries.

3

proposition that "the measure of the damages is the value of the property converted at the time of conversion plus interest."[3] *Id* at 9. United General reasons that its damage is pegged at the amount of the sales proceeds, which is tantamount to its entire claim as of the time of the sale.

In *Landsman Packing Co. v. Continental Can Co.*, 864 F.2d 721 (11th Cir. 1989), the Eleventh Circuit Court of Appeals did indeed state that in conversion cases the general measure of damages is the "fair and reasonable market value at the time of the conversion plus interest." *Id.* at 733. Yet, the court went on to observe that those damages would be mitigated by the tortfeasor's return of the converted property. *Id.* at 734 n.25. That result is not dissimilar to the case at bar where foreclosure would have mitigated Phenix-Girard's damages. Although the Jordans' conversion deprived Phenix-Girard of the sale proceeds, Phenix-Girard could not forego remedies (here foreclosure) which could potentially make it whole. Indeed, Phenix-Girard was in the process of foreclosing when United General purchased its claim. If foreclosure would have resulted in the satisfaction of its claim, Phenix-Girard would have fully mitigated its damages resulting from the conversion.

Next, United General contends that in intentional tort cases, plaintiffs have a lesser duty to mitigate damages. Brief of United General, Doc. #43, p. 9. *See Stifel, Nicolaus & Co. v. Smithson (In re Smithson)*, 372 B.R. 913, 919 n.1 (Bankr. E.D. Mo. 2007) (citing Restatement (Second) of Torts § 918(2)) and *Washington Mutual Bank v. Dubovoy (In re Dubovoy)*, 377 B.R. 705 (Bankr. M.D. Fla. 2006).

The *Smithson* court, however, did not conclude that the plaintiff had no duty to mitigate damages. Under 11 U.S.C. § 523(a)(6), a debt is not dischargeable in bankruptcy if it is the result of a willful and malicious injury

---

[3] The authority cited includes *Landsman Packing Co., Inc. v. Continental Can Co.*, 864 F.2d 721 (11th Cir. 1989); *American General Finance v. Taylor (In re Taylor)*, 187 B.R. 736 (Bankr. N.D. Ala. 1995); *Call Federal Credit Union v. Sweeney (In re Sweeney)*, 264 B.R. 866 (W.D. Ky. 2001). While *Landsman Packing Co.* is discussed *supra*, no further discussion of the holdings in *Taylor* and *Sweeney* is needed. In each of those cases, the collateral conversion was complete, leaving the creditor with no possibility of mitigation unlike the case at bar.

4

to the property of another. That debt is determined, that is, liquidated, by applying traditional elements used in calculating damages, including the element of mitigation.

In *Dubovoy* the creditor had mistakenly released its mortgage on the debtor's realty. The debtor sold the property and did not pay the sale proceeds to the creditor. The court found that the failure to remit the sale proceeds constituted a willful and malicious injury to the creditor's property and that the debt was nondischargeable. *Id*. at 711. In brief, United General notes that the court in *Dubovoy* did not hold the creditor accountable for erroneously releasing its mortgage and did not require it to mitigate damages such as by seeking to revive its mortgage.

The *Dubovoy* decision and this court's holding are not at odds. In both cases it was found that the debtors acted willfully and maliciously when they sold mortgaged property and failed to pay the sales proceeds to the creditor. The ultimate holdings differ only because of factual distinctions. In *Dubovoy*, at the time of the sale, the mortgagee had mistakenly released its mortgage. Once the property was sold to a third party, the only remaining interest of the mortgagee was in the sales proceeds.[4] When those proceeds were converted, the mortgagee had no other avenue to pursue recovery. These facts are distinguishable from the case at bar because here the mortgagee, after the conversion of the sales proceeds, retained its *in rem* rights in the collateral which, if pursued, would mitigate, if not eliminate, its claim.

Finally, United General contends that under Alabama law "a creditor is not required to foreclose its interest in collateral, but can instead look to its debtor for payment." Brief of United General, Doc. #43, p. 11. In support of this statement, United General cites to *Morris v. Fidelity Mortgage Bond Co.*, 187 Ala. 262, 65 So. 810 (1914), *overruled on other grounds*, *Fidelity Mortgage*

---

[4] United General posits that because the *Dubovoy* court did not require the mortgagee to mitigate by filing an action to revive its mortgage, the court intimated that mitigation in a collateral conversion case is not required. This court disagrees. Efforts at mitigation are not required if such efforts would prove futile. In *Dubovoy* a suit to reinstate a mortgage on property which was by then in the hands of a bona fide purchaser would likely have been viewed as futile, rendering it a non-issue.

5

*Bond Co. v. Morris*, 191 Ala. 318, 68 So. 153 (1915). There the Court stated that "[t]he holder of the note and mortgage is not required to first foreclose the mortgage, but may bring his action on the note alone." *Id.* at 811. The *Morris* court goes on to state: "A mortgagee may, in the absence of an agreement to the contrary, proceed on all of his remedies at once, or use such of his remedies as will give him the easiest relief against the mortgagor or a subsequent incumbrancer or assignee." *Id.* at 811. Relying on *Morris*, United General states:

> The Jordans liability for the indebtedness to United General cannot be discharged simply because United General has another source of recovery. If such were the case, no creditor would be able to seek damages for willful and malicious conversion (inside bankruptcy or otherwise) until and unless the creditor had first exhausted all other possibilities of recovery.

Brief of United General, Doc. #43, p. 11. To the extent that the above quote means that a conversion plaintiff has no duty to mitigate damages, the court disagrees. If a defendant destroys the collateral of a plaintiff, a plaintiff may have no other option besides a claim for the monetary value of the collateral. However, in the instant case, although the Jordans converted the sale proceeds, they did nothing to destroy the interest of Phenix-Girard in the real property. At the time of the conversion, the value of the real property exceeded the claim of Phenix-Girard, and Phenix-Girard was protected from injury by the value of the property. United General purchased the claim of Phenix-Girard. If Phenix-Girard had no injury, United General has none either.

## CONCLUSION

This conclusion is not one that the court reaches lightly or without second thoughts. This decision means that the Jordans, who knowingly failed to pay over proceeds from the sale of mortgaged property, see that mortgage claim discharged in bankruptcy. Yet, the plaintiff has not met its burden of showing that the conversion resulted in an injury.

United General contracted to insure this realty against defects in title or other encumbrances. Through its negligence, it failed to discover a recorded

6

mortgage against the subject property. It now finds itself in the rather unique position of not being able to foreclose because of its obligations under the title insurance policy but also being unable to prove an injury absent foreclosure. Again, this predicament was brought about by its own negligence.

For these reasons and pursuant to Fed. R. Bankr. Proc. 9021, a separate order will enter finding United General's claim against the Jordans dischargeable.

Done this the 3rd day of July, 2008.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Jeremy L. Retherford, Plaintiff's Attorney
   F. Patrick Loftin, Defendants' Attorney

7